IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| BILLY WILLIAM EVAS ARRINGTON, | ) No. 12-213 |
|---|---|
| Plaintiff, | ) |
| v. | |
| CAROLYN W. COLVIN, | |
| Defendant. | |

# OPINION AND ORDER

## SYNOPSIS

In this action, Plaintiff filed an application for Supplemental Social Security Income, on October 7, 2009. The claim was denied initially, and on rehearing. The Appeals counsel denied a request for review. Presently before the Court are the parties' Motions for Summary Judgment. For the following reasons, Plaintiff's will be granted, and Defendant's denied.

## OPINION

### I. STANDARDS OF REVIEW

Judicial review of the Commissioner's final decisions on disability claims is governed by statute, and is plenary as to all legal issues. 42 U.S.C. §§ 405(g) 4, 1383(c)(3)5; Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 431 (3d Cir. 1999).

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d

1

900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979).

A district court cannot conduct a de novo review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D. Pa. 1998). Instead, where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the matter differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). However, if the ALJ has not sufficiently explained the weight he has given to all probative evidence, it may be inappropriate for the court to find that substantial evidence supports the ALJ's decision. Dobrowlowsky, 606 F. 2d at 407. To determine whether a finding is supported by substantial evidence, the district court must review the record as a whole. 5 U.S.C. §706. "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ…is required so that the reviewing court can determine whether the reasons for rejection were improper." Cotter v. Harris, 642 F. 2d 700, 706-07 (3d Cir. 1982).

When reviewing a claim, the ALJ utilizes a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past

relevant work, whether he can perform any other work which exists in the national economy. 20 20 C.F.R. §§ 404.1520, 416.920.  If it is determined that the claimant is unable to return to his previous employment, the burden shifts to the Commissioner to prove that claimant is able to engage in alternate substantial gainful activity.  Dobrowlowsky, 606 F. 2d at 406.

After reviewing the entire record, a district court may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing.  Rankin v. Colvin, No. 12-1275, 2013 U.S. Dist. LEXIS 104649 (W.D. Pa. July 26, 2013).

## II.     FACTS

The issues presented center solely on Plaintiff's intellectual functioning, of which I will set forth a brief, pertinent history.  Plaintiff, born on October 7, 1958, was fifty-two at the time of his February 22, 2011 social security hearing.  The record contains evidence of several full-scale IQ scores:  76, when Plaintiff was eight years old; 72, when Plaintiff was eleven, at which time the school psychologist recommended special education classes; 64, when Plaintiff was fifteen, at which time it was recommended that he continue special education; and, most recently, a score of 69, in 2010.  In 2009, a psychiatrist from Stairways Behavioral Health, where Plaintiff underwent treatment, completed a Statement of Ability to Do Work-Related Activities.  The psychiatrist noted that Plaintiff had marked limitations in understanding, remembering, carrying out detailed instructions, social interactions, sustained concentration, and persistence, and was moderately limited with respect to simple instructions.

In 2010, Glenn Bailey, Ph.D., twice evaluated Plaintiff at the agency's request.  He issued a diagnosis of mild mental retardation, and a full-scale IQ score of 69.  In 2010, John Vigna, Psy.D., conducted a mental RFC assessment, and found that Plaintiff was markedly limited in the ability to carry out detailed instructions, but only moderately or not significantly limited in other

3

respects. Dr. Vigna stated, "the medical evidence establishes medically determinable impairments of…Mild Mental Retardation." Dr, Vigna stated, "[B]ased on his functioning, he does not seem to meet the capsule definition of MR (got GED, has a driver's license)." Dr. Vigna also concluded that Plaintiff "is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments."

In terms of his activities, Plaintiff had a work history as an assembly worker, landscaper, truck loader, and in retail maintenance and management. Plaintiff indicated that had no trouble with personal care, paying bills, handling a savings account, and using a checkbook. He obtained his GED and served in the army. He testified that he had a driver's license with no restrictions, and drove almost every day, including to the doctor's office and the store.

### III. THE PARTIES' MOTIONS

Plaintiff contends that the ALJ erred in assessing Plaintiff's intellectual functioning, which implicate steps two and three of the sequential process. In particular, he contends that the ALJ failed to properly consider the requirements of Listing 12.05(c).[1]

Section 12.05 of Subpart P, Appendix 1, defining mental retardation, has essentially two parts. In the first part, a claimant must prove "subaverage general intellectual functioning with deficits in adaptive functioning" manifesting before age 22. In the second part, the claimant must show that any one of four criteria, set forth in 12.05 subparts A-D, satisfies the required severity. Pertinent here, "[t]o meet the requirements of § 12.05[(C)] a claimant must i) have a valid verbal, performance or full scale IQ of 60 through 70, ii) have a physical or other mental impairment imposing additional and significant work-related limitations of function, and iii) show that the mental retardation was initially manifested during the developmental period (before age 22)." <u>Markle v. Barnhart</u>, 324 F.3d 182, 187 (3d Cir. 2003).

---

[1] Because today's Order remands the matter, I need not reach Plaintiff's challenges to the RFC.

With regard to the first prong, when multiple IQ scores are available from different times of a claimant's life, the lowest score should be considered. Velardo v. Astrue, No. 7-1604, 2009 U.S. Dist. LEXIS 6628, at \*\*34-39 (W.D. Pa. 2009) (collecting cases); see also Markle v. Barnhart, 324 F.3d 182, 186 (3d Cir. Pa. 2003). Only one score within the qualifying range is necessary. Velardo, 2009 U.S. Dist. LEXIS 6628, at \*\*29-30. Moreover, the second prong, requiring an "other mental impairment," is satisfied if the ALJ has identified one or more severe impairments – including depression -- other than the mental retardation. See Manigault v. Astrue, No. 8-1409, 2009 U.S. Dist. LEXIS 36693, at \*27 (W.D. Pa. Apr. 30, 2009). Finally, the last prong of Listing 12.05(c) may be satisfied by both IQ test scores or a history of special education classes. Velardo, 2009 U.S. Dist. LEXIS, at \*25.

The ALJ is not required to accept a claimant's IQ score if it is found invalid, and may reject scores that are inconsistent with the record. Markle, 324 F. 3d at 186; Velardo, 2009 U.S. Dist. LEXIS at \*28. A test is invalid, for example, if there is evidence that the claimant deliberately attempted to distort the results, or the testing conditions could have negatively affected the score. Velardo, 2009 U.S. Dist. LEXIS at \*27. A test might be inconsistent with the record if inconsistent with the claimant's prior education or work history, daily activities, behavior, or other aspects of his life. Id. at \*\*27-29. If an ALJ rejects an IQ score, there must be substantial evidence in the record to support a finding that the score is invalid. Blackwell v. Comm'r, No. 8-374, 2008 U.S. Dist. LEXIS 90303, at \*15 n. 12 (W.D. Pa. Nov. 6, 2008).

Here, at step two of the sequential process, the ALJ found that Plaintiff had severe impairments of depression and anxiety. He found that all other alleged impairments were non-severe. The ALJ's sole analysis of Plaintiff's intellectual functioning appears at step two, and reads as follows:

> The claimant received special education services in the category of Educable Mentally Retarded but his IQ scores were inconsistent. The claimant obtained IQ scores consistent with this category in January 1974 but his scores from 1967 and 1970 were not consistent with mild mental retardation… IQ scores from 2010 were consistent with a diagnosis of mild mental retardation but the specific limitations cited by the evaluating psychologist were not supportive of this diagnosis. There is no current evidence supporting the existence of significant limitations in the claimant's daily activities, social functioning or concentration, persistence, or pace due to impaired intellectual functioning and his daily activities do not demonstrate significant deficits in adaptive functioning.

If a record "arguably supports" a finding that Plaintiff meets Listing 12.05, and the ALJ failed to adequately explain his findings in that regard, "remand is required." Covington v. Colvin, No. 12-378, 2013 U.S. Dist. LEXIS 105004, at **7-8 (E.D.N.C. June 19, 2013). There is no question that the record might support a finding that Plaintiff meets Listing 12.05, and that the ALJ failed to explain his conclusion that Plaintiff did not meet any listed impairment. Plaintiff's IQ score was in the appropriate range when he was under twenty-two years of age, Plaintiff was enrolled in special education classes when he was under twenty-two years of age, and the ALJ found that he suffered severe impairments other than mental retardation. Despite this record, the ALJ omitted reference to Listing 12.05(c).

There is no suggestion that the ALJ found the qualifying IQ score of 64, when Plaintiff was aged fifteen, invalid; nor did the ALJ find that the score was inconsistent with affirmative facts of record.[2] Instead, the ALJ relied solely on non-specific assertions regarding the absence of "current" evidence supporting significant limitations or deficits. Moreover, precedent teaches that qualifying mental retardation is not inconsistent with or precluded by factors such as a driver's license, a work history as a truck driver, a GED, and the ability to do basic activities

---

[2] The same is true with Plaintiff's qualifying score in 2010.

6

such as laundry and food preparation.[3] Cf. Blackwell, 2008 U.S. DIST. LEXIS 90303 at **14-15; Markle, 324 F. 3d at 187. While Defendant speculates that the ALJ might have relied on other factors such as Plaintiff's "normal" motor activity, speech, and thought content, that is no more than speculation. Moreover, the omission of 12.05(c) from the ALJ's decision cannot have resulted from Plaintiff's presentment of his case, because Plaintiff's counsel explicitly raised the Listing at the hearing. It is unclear whether the ALJ failed entirely to heed Listing 12.05(c), or instead considered and rejected it, but in doing so failed to specify his reasons. Either one is an inadequate scenario, and Defendant cannot prevail.

## CONCLUSION

For the foregoing reasons, this case must be remanded in order to allow for assessment or reassessment of Plaintiff's intellectual functioning and Listing 12.05(c), in accordance with this Opinion.[4]

---

[3] These cases bear on Dr. Vigna's hedged observation that Plaintiff's GED and driver's license "seem" to bring him outside of the capsule definition of mental retardation. The capsule definition reads as follows: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05. In any event, the ALJ never made any findings regarding either the capsule definition or the weight to be accorded Dr. Vigna's statement.

[4] "When the ALJ makes no express finding that an IQ score is invalid and/or fails to explain his reasons for questioning the validity of the test results, some reviewing courts have concluded they must accept the score as valid and find that the claimant did in fact meet the first prong of the capsule definition where a score is in the appropriate range." Velardo, 2009 U.S. Dist. LEXIS 6628, at **29-30 (W.D. Pa. 2009). I stop short of making any such findings, in order to afford the ALJ the opportunity to reassess and/or clarify his decision in all pertinent respects.

# ORDER

AND NOW, this 10th day of January, 2014, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Summary Judgment [8] is GRANTED, and Defendant's [10] DENIED. This matter is remanded for further proceedings consistent with the foregoing Opinion.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Senior Judge, U.S. District Court